Charles F. Nelis, Appellant, *v.* Redevelopment Authority of Allegheny County, Appellee.

Argued November 9, 1973, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*Barry M. Simpson,* with him *Brennan and Brennan,* for appellant.

*William J. Fahey,* with him *Stanley N. Horn* and *Sylvan Libson,* for appellee.

OPINION BY JUDGE BLATT, February 7, 1974:

This is the second appeal to the Commonwealth Court by Charles F. Nelis (condemnee) involving the condemnation of his property by the Redevelopment Authority of Allegheny County. The factual history of the case has not changed since the previous appeal, cited as *Nelis v. Redevelopment Authority of Allegheny County,* 4 Pa. Commonwealth Ct. 533, 287 A. 2d 880

(1972), and it was well outlined by President Judge BOWMAN in his able opinion in that case:

"Charles F. Nelis, appellant, owned a certain parcel of commercial property in the Borough of East Pittsburgh on which was located a building containing a hotel, restaurant and bar. The building was totally destroyed by fire in March 1967. Prior to the fire, the property with its improvements had been included in a comprehensive urban redevelopment plan, possibly as early as 1951, but formal condemnation proceedings as to individual properties in the area were not commenced until late 1966. A declaration of taking by the Redevelopment Authority of Allegheny County (Authority) as to the Nelis property was filed on June 26, 1967, some three months after the fire.

"After a Board of Viewers had awarded Nelis compensation for the value of the now-vacant land only, he appealed to the Court of Common Pleas of Allegheny County alleging that he was aggrieved by the failure of the viewers' award to include the value of the structure destroyed by fire prior to the filing of the declaration of taking.

"At trial, Nelis offered to prove by his own testimony certain actions and activities on the part of the Authority with respect to his property prior to the formal condemnation date on June 26, 1967 which he contends would support a *de facto* condemnation at some prior unspecified date. He also offered to prove by witnesses a pre-fire valuation of his property interest. The lower court excluded such evidence ruling that the value on the date of the filing of the declaration was the only valuation that could properly be considered by the jury and that it was not within the province of the jury to determine the legality of the taking. Having so ruled, and there being no dispute as to the value of the land alone, a directed verdict was entered in favor of Nelis in the same amount as contained in the view-

ers' award. Nelis then filed a motion for new trial assigning the trial judge's rulings as error. The motion was denied and this appeal taken."

We affirmed the lower court in that case and decided that Nelis had waived his right to raise the issue of a *de facto* taking by having failed to petition for the appointment of a board of viewers pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-502(e) (Code) and by having failed to file preliminary objections to the declaration of taking, the exclusive method of challenging condemnation proceedings as provided by Section 406(a) of the Code, 26 P.S. §1-406(a). *See Faranda Appeal*, 420 Pa. 295, 216 A. 2d 769 (1966). When our Supreme Court denied allocatur, the condemnee then commenced the procedural steps which led to this present appeal.

Nelis filed a petition for the appointment of a board of viewers, pursuant to Section 502(e) of the Code, alleging that an uncompensated *de facto* taking occurred prior to the formal declaration of taking. The appointment was made, but, after the court received a motion from the condemnor, a rule was granted on the condemnee to show cause why the order of appointment should not be vacated. Argument was again conducted and the order was vacated. This action by the lower court is the subject of the appeal now before us, and we find that the lower court was correct in vacating the order which appointed a board of viewers.

The method available to a condemnee for raising the issue of a *de facto* taking was discussed in *Nelis, supra,* and the appointment of a Board of Viewers at this point in the history of the case is not a proper remedy. Section 502(e) of the Code, 26 P.S. §1-502(e), specifically provides: "If there has been a compensable injury suffered and *no declaration of taking therefor has been filed,* a condemnee may file a petition for the appointment of viewers substantially in the form provided

for in subsection (a) of this section, setting forth such injury." (Emphasis added.) Herein, a formal declaration of taking had already been filed, and it, therefore, precluded the applicability of this petition.

As President Judge BOWMAN explained in *Nelis, supra,* Section 406(a) of the Code, 26 P.S. §1-406(a), provides a means, by way of preliminary objections, for challenging the right of the condemnor to appropriate property, the procedure followed or the declaration of taking itself. By claiming that a *de facto* taking had occurred, Nelis was actually asserting that the date of taking was not that as established by the declaration of taking, but had occurred previously thereto. He could have used the preliminary objections to question the allegedly improper date, or any other procedural omission which would deny him just compensation for the property (including the improvements and fixtures thereon) which were condemned. The appellant failed to take timely advantage of this remedy, however, and, as stated by the Act, the "[f]ailure to raise these matters by preliminary objections shall constitute a waiver thereof."

Although a remedy could have been effectuated by the appellant for redress of the alleged *de facto* taking, it was not used, and, consequently, Nelis now contends that if a board of viewers is not appointed he will be denied due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution. We need not consider the dubious merits of this contention, for this argument must be disposed of on procedural grounds. "It is well settled that a question not raised properly in the court below will not be considered on appeal. [Citations omitted.] This rule applies even though the question sought to be raised involves a constitutional issue." *Commonwealth v. Robinson,* 7 Pa. Commonwealth Ct. 521, 525, 300 A. 2d 915 (1973). Nelis did not raise these constitutional ques-

tions in the lower court and he may not assert them now.

Again, believing that our prior decision answered the question raised herein, we rest on the explicit language in *Nelis, supra*: "We conclude that the issue of a *de facto* taking having occurred prior to the filing of a declaration of taking, if not previously raised under Section 502(e), must be raised by preliminary objection to the declaration, and failure to do so constitutes a waiver to thereafter raise the issue." 4 Pa. Commonwealth Ct. at 537, 287 A. 2d at 882. We need only reemphasize that the appellants cannot *now* assert it by way of a Section 502(e) petition.

We, therefore, affirm the decision of the lower court.